UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ADAIR COUNTY HOSPITAL DISTRICT | ) | CHAPTER 9 |
| | ) | |
| Debtor | ) | CASE NO. 13-10939 |
| | ) | |

### APPLICATION FOR AN ORDER (1) DIRECTING AND APPROVING NOTICE; AND (2) SETTING DEADLINE FOR FILING OBJECTIONS TO PETITION

Adair County Public Hospital District Corporation (the **"Debtor"**), hereby applies for an entry without a hearing of an order: (1) approving the proposed form of notice of commencement of this case pursuant to 11 U.S.C. § 923 and (2) setting a deadline for the filing of any objections to the petition initiating this chapter 9 case pursuant to 11 U.S.C. § 921. In support of this application, the Debtor would respectfully show unto this Court the following:

### I. BACKGROUND

The Debtor has filed a petition seeking relief under chapter 9 of Title 11 of the United States Code (the **"Bankruptcy Code"**). KRS 216.310 *et seq.* permit a county to form a hospital district "in order to provide a broader basis for local support of hospitals and related health facilities." KRS 216.310. The Debtor, a public agency, was created in 1968 by act of the Fiscal Court of Adair County, Kentucky to provide hospital facilities to the residents of Adair County (the **"County"**). The Debtor operates, controls, and manages all matters concerning the County's health care functions. The Adair County Fiscal Court appoints the members Board of Trustees of the Debtor.

The Debtor is the lessee of a hospital located in the city of Columbia, Kentucky on 901 Westlake Dr., Columbia, KY 42728 (the **"Hospital"**). The Hospital is licensed for 74 total beds,

of which 25 are dedicated to behavioral health. The average daily census of the Hospital is 8.38 patients. The Hospital was constructed in 1979 - 1980. The Hospital has 49 licensed acute beds, which includes the telemetry unit, 25 licensed behavioral health beds, 3 operating rooms, and 6 patient beds in the Trauma room with 2 triage rooms in the emergency area. The Debtor leases the Hospital from the Adair County Public Hospital District Corporation d/b/a Westlake Regional Hospital (the **"Corporation"**), a non-profit corporation incorporated December 30, 1976 by the Debtor. The Hospital provides general medical and surgical care in inpatient, outpatient, and emergency room service areas. The Hospital has 1 full time physician and 3 part-time physicians on active medical staff. The Debtor and the Corporation own and operate four rural health clinics: two in Columbia, Kentucky, one in Russell Springs, Kentucky, and one in Edmonton, Kentucky.

For the period from July 2012 to March 2013, the net loss of the Debtor and the Corporation was $1,847,074. The Debtor has been able to stay in business only because it and the Corporation stopped paying long-term debt and received a cash infusion from the Adair County Fiscal Court to the Corporation which was in the form of a loan to be re-paid to the County. In an effort to provide a revenue stream for satisfying the Debtor's financial obligations, on July 20, 2012, the Board of Trustees of the Debtor adopted a Resolution for a Hospital District Tax, setting an ad valorem tax rate of 3.7 cents per $100 of assessed property value and providing for the implementation and collection of the tax (the **"Hospital District Tax"**). A group of Adair County taxpayers subsequently filed a recall petition pursuant to KRS 132.017 challenging the 3.7 cents per $100 tax rate. As a result, the Hospital District Tax has not been billed or collected, and the question of whether to recall the Hospital District Tax rate cannot be submitted to the voters until the next general election, which will be in November of 2014.

Debtor has considered alternatives to address its obligations outside of bankruptcy, but has deemed a chapter 9 necessary. On July 30, 2013, the Debtor's Board voted to authorize the Debtor to file a petition for bankruptcy under chapter 9 of the Bankruptcy Code. Accordingly, on July 31, 2013, the Debtor filed its chapter 9 petition.

## II. ELIGIBILITY OF DEBTOR TO FILE CHAPTER 9 CASE.

Section 109(c) of the Bankruptcy Code sets forth the statutory criteria for eligibility as a Chapter 9 debtor. To file for Chapter 9 relief, a debtor should: (1) be a municipality; (2) be specifically authorized to be a Chapter 9 debtor; (3) be insolvent; (4) be willing to effect a plan to adjust its debts; and (5) also meet one of the following four requirements: (i) the debtor has obtained the agreement of creditors holding at least a majority in the amount of claims of each class that the debtor intends to impair through its plan; (ii) the debtor has negotiated in good faith but failed to obtain the agreement of creditors holding at least a majority in the amount of claims of each class that the debtor intends to impair under its plan; (iii) the debtor is unable to negotiate with its creditors because such efforts are impracticable; or (iv) the debtor reasonably believes that a creditor may attempt to obtain a preference. 11 U.S.C. § 109(c).

Section 109(c)(1) provides that the debtor filing a petition under Chapter 9 must be a municipality. A "municipality" is defined in section 101 of the Bankruptcy Code to mean "political subdivision or public agency or instrumentality of a State." 11 U.S.C. § 101(40).

While the Bankruptcy Code does not define the terms "public agency, or instrumentality of a State," a legal test to determine public agency status was established in *In re Las Vegas Monorail Co.*, 429 B.R. 770, 795 (Bankr. D. Nev. 2010), identifying the factors for consideration as "1) the extent to which the entity possesses traditional government powers or attributes; 2) the extent of control over the entity possessed by the city, state, or county; and 3) the state's

classification of the entity." *Id*.

In this case, the Debtor is a public agency or instrumentality, and thus a "municipality" as defined in section 101(40) of the Bankruptcy Code. The Debtor was created by statute in the public interest, has the power to tax, and is supported in part by public funding through the County. Furthermore, vacancies on the Board are filled by the Adair County Fiscal Court. Applying the analysis set forth in *Las Vegas Monorail,* Debtor is a public agency and thus meets the statutory requirement for "municipality" status. *See Greene County Hospital*, 59 B.R. 388, 389-90 (Bankr. S.D. Miss. 1986) (hospital a "municipality" because the hospital was subject to control by a county board of supervisors).

Section 109(c)(2) also requires that a municipality be "specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter." 11 U.S.C. § 109(c)(2).

The Commonwealth of Kentucky has adopted measures which expressly enable municipalities to file bankruptcy under federal law. KRS 66.400 provides:

> Any taxing agency or instrumentality as defined in Chapter IX of the Federal Bankruptcy Act as amended by the Acts of Congress of August 16, 1937, Chapter 657, June 22, 1938, Chapter 575, March 4, 1940, Chapter 41, June 28, 1940, Chapter 438 and acts amendatory and supplementary thereto or acts extending the date of expiration thereof, as the same may be amended or extended from time to time, may file a petition for the composition of its debts and to do all things necessary to comply with the provisions of the Federal Bankruptcy Act.[1]

This statute is applicable to the Debtor as the Debtor is a taxing agency or instrumentality and therefore a municipality pursuant to the Bankruptcy Code, which is the current successor to the Bankruptcy Act.

---

[1] Additional provisions of KRS 66.400 apply to counties, which the Debtor is not.

Section 66.400 of the Kentucky Revised Statutes meets the "specific authorization" requirement under 11 U.S.C. § 109(c)(2) and authorizes the Debtor to bring its petition under Chapter 9. *See In re Orange County*, 183 B.R. 594 (Bankr. C.D. Cal. 1995) (holding that under § 109(c), the enabling or other legislation governing the debtor must show such specific authorization by exact, plain, and direct language). Additionally, on July 30, 2013, the Board of Trustees of the Debtor adopted a resolution to authorize the commencement and prosecution of the Case.

Section 109(c)(3) requires that the Chapter 9 petitioner be insolvent. 11 U.S.C. § 109(c)(3). Section 101 of the Bankruptcy Code provides that a municipality is insolvent when its financial condition is such that it is (i) generally not paying its debts as they become due unless such debts are the subject of a bona fide dispute; or (ii) unable to pay its debts as they become due. *Id.* § 101(32)(C). Insolvency is determined based on the debtor's financial condition as of the date the petition is filed. As described in detail above, the Debtor is unable to pay its debts as they become due.

As of the Petition Date, it is clear the Debtor was and would be unable to pay its bills as they became due in the present and upcoming year. 11 U.S.C. § 101(32)(C). The Debtor is and has been operating at a loss and is unable to consistently pay its debts as they become due. As described in more detail in the financial statements, year to date, for the period from July 2012 to March 2013, the net loss of the Debtor was $1,847,074. As of the date the Debtor filed its petition, it is clear the Debtor is unable to "pay its bills as they become due". 11 U.S.C. § 101(32)(C). In short, the Debtor is insolvent within the meaning of 11 U.S.C. §§ 101(32)(C) and 109(c)(3).

Section 109(c)(4) requires that a Chapter 9 petitioner desire to effect a plan to adjust its

debts. As demonstrated by the pre-petition efforts of the Debtor, the Debtor desires to effect a plan of adjustment with respect to its debts in this case.

Section 109(c)(5) requires that a Chapter 9 petitioner demonstrate that it has satisfied or is excused from certain pre-petition negotiation standards with respect to its creditors. *See* 11 U.S.C. § 109(c)(5). A debtor must satisfy one of the following four options to satisfy Section 109(c)(5):

> (1) The debtor has obtained the agreement of creditors holding at least a majority in the amount of claims of each class that the debtor intends to impair through its plan;
> (2) The debtor has negotiated in good faith but failed to obtain the agreement of creditors holding at least a majority in the amount of claims of each class that the debtor intends to impair under its plan;
> (3) The debtor is unable to negotiate with its creditors because such efforts are impracticable; or
> (4) The debtor must reasonably believe that a creditor may attempt to obtain a preference.

It was impracticable for the Debtor to negotiate with its creditors because it is unclear which debts are those of the Debtor and which are debts of the Corporation. Both the Corporation and the Debtor have entered into contracts and conducted themselves as Westlake Regional Hospital, which is an assumed name of only the Corporation. As the Debtor is the entity operating the Hospital, the Debtor believes that claims relating to the operations should run with the Debtor, but contracts entered into in both the name of Westlake and the Corporation's name appear to impose certain operational obligations upon the Corporation. Consequentially, the Debtor and the Corporation dispute nearly all claims against them as they have been unable to ascertain the identity of the responsible party. The Debtor and the Corporation's creditors consist of vendors for supplies and leases, reimbursements to employees, refunds to third-party insurance companies, taxes, payments to banks for employee funded Christmas Club accounts, and long term debt payments to banks. It was simply impractical for

the Debtor to negotiate with these creditors prior to filing its petition. *See Orange County*, 183 B.R. at 607 ("the impracticality requirement may be satisfied based on the sheer number of creditors involved."); *In re Villages at Castle Rock Metro. Dist*. No. 4, 145 B.R. 76, 85 (Bankr. D. Colo. 1990) ("It certainly was impracticable for [debtor] to have included several hundred Series D bondholders in these conceptual discussions.").

Numerosity of creditors is not the only circumstance under which the impracticability requirement might be satisfied. *In re Valley Health Sys*., 383 B.R. 156, 165 (Bankr. C.D. Ca. 2008). Negotiations may be impractical where it is necessary to file a Chapter 9 case to preserve the assets of a municipality, where a delay in filing a petition to negotiate with creditors would put those assets at risk. *See Orange County,* 183 B.R. 594 at 607-08 (negotiation impractical where there was no time to enter into negotiations with its participants due to the threat of liquidation assets); see also 2 Collier P 109.04[3][e][iii] at 109-35 ("[W]here it is necessary to file a chapter 9 case to preserve the assets of a municipality, delaying the filing to negotiate with creditors and risking, in the process, the assets of the municipality makes such negotiations impracticable"). Even if the Debtor could negotiate with the majority of its creditors, which the Debtor cannot, the Chapter 9 filing is necessary to protect the Debtor's assets, continue its business operations, and continue providing uninterrupted healthcare services to its patients while simultaneously developing a comprehensive plan for adjustment of debts. Thus, the Debtor believes it has satisfied the third requirement: it is unable to negotiate with its creditors because such negotiation is impracticable.

Accordingly, Debtor believes it is eligible to be a "debtor" under Chapter 9 of the Bankruptcy Code.

### III. ARGUMENT

**A. The Proposed Order Providing Notice is Appropriate.**

Section 923 of the United States Bankruptcy Code requires that notice of the commencement of a chapter 9 case and notice of an order of relief under chapter 9 be given. Section 923 further requires that this notice must be published at least once a week for three successive weeks in: (1) at least one newspaper of general circulation published within the district in which the case is commenced; and (2) in such other newspaper having a general circulation among bond dealers and bondholders as the court designates. 11 U.S.C. § 923. As further discussed below, Debtor is requesting that the Court not require the Debtor to publish notice in national business publications such as *The Wall Street Journal* or *The Bond Buyer* because the Debtor has no outstanding bonds.

The Debtor submits the proposed Notice satisfies the requirements of 11 U.S.C. § 923. The Notice provides notice of the automatic stay and deadlines for objection to the petition, and provides that, if no objection to the petition is filed within the specified time and date, the Order will constitute notice of the entry of an order for relief. The Notice also lists that the persons that must be served with any objection. The Notice would provide notice both of this case, and the related Adair County Public Hospital District Corporation proceeding, case no. 13-10940.

The proposed Order provides for publication in the Louisville *Courier-Journal* and the *Adair Progress*. The *Courier-Journal* is a newspaper of general circulation published in the Western District of Kentucky. The *Adair Progress* is a newspaper of general circulation which is published within Adair County, which is within the Western District of Kentucky, but is not widely circulated outside the County. These newspapers are appropriate for providing notice of the case as they are widely read in the geographical vicinity of the Debtor and its readers are likely to include creditors of the Debtor and other persons or entities with an interest in the

activities of the Debtor and events in this case. The Debtor submits that publication of the proposed Notice in these newspapers constitutes good and sufficient notice and is consistent with the requirement of 11 U.S.C. § 923. The Debtor intends to begin publishing the Notice in these newspapers immediately after the Court's approval thereof, once per week for three consecutive weeks as provided in 11 U.S.C. § 923. The Debtor understands that the Clerk of Court will mail the Order to the United States Trustee and, using the mailing matrix filed with the Debtor's chapter 9 petition, to all entities identified in the List of Creditors filed by the Debtor pursuant to 11 U.S.C. § 924.

While section 923 provides for notice in a newspaper having a general circulation among bond dealers and bondholders as the Court designates, the Debtor does not believe such publication is necessary in this case as the Debtor does not have outstanding bonds. *See* Declaration of Neal M. Gold, attached hereto as Exhibit A, at 2, ¶ 6. The publications typically used for such compliance with this requirement would be *The Wall Street Journal* or *The Bond Buyer*, which are national publications relied upon by bond traders and dealers. Legal advertising in these publications is extremely expensive. Although such an expense would have to be incurred if the Debtor had any outstanding publicly traded bonds backed by the Debtor's assets and revenues, the circumstances in this case do not justify imposition of such an expense when the Debtor does not have outstanding bonds.

**B. It is Appropriate to Order that Objection to Debtor's Petition be Filed by September 9, 2013.**

Section 921(d) provides for the entry of an order of relief unless the chapter 9 petition is dismissed under Section 921(c). 11. U.S.C. § 921(d). Section 921(c) authorizes the dismissal of a chapter 9 petition, if, after an objection to the petition is filed, the court determines that the

petition was not filed in good faith, or that the petition does not meet the requirements of title 11 of the United States Bankruptcy Code. While 11 U.S.C. § 921(c) details the possibility of objections to a chapter 9 petition, there is no set deadline for filing such objections. Accordingly, Debtor requests the court set a deadline for the filing of any objections to Debtor's chapter 9 petition.

Providing a deadline by which parties must submit objections to Debtor's chapter 9 petition is both prudent and practical as it would remove the uncertainty created by the absence of specific timing provisions in 11 U.S.C. § 921. Parties should not be permitted to an unlimited timeframe within which to objection to Debtor's petition regardless of whether a particular party is acting in good faith or seeking to gain leverage in this case. To expedite the entry of an order of relief in this case, the Debtor requests that the deadline for filing objections be established as, September 9, 2013, a date 39 days from the petition date and approximately 10 days after the last anticipated weekly publication.

### IV. CONCLUSION

Wherefore, the Debtor respectfully requests the that Court enter an order;

    1. approving the form of notice filed concurrently as Exhibit B;

    2. approving the manner of publication in the *Courier-Journal* and the *Adair Progress* as set forth in the Order;

    3. directing the Clerk of Court to mail the Order to all creditors listed on the Debtor's List of Creditors filed pursuant to 11 U.S.C. § 924 and in accordance with Bankruptcy Rule 1007(e);

    4. establishing September 9, 2013 as the deadline for filing objections to the Debtor's Chapter 9 petition; and

    5. granting such other and further relief this Court deems just and equitable.

Respectfully submitted,

/s/ James E. McGhee III
DAVID M. CANTOR
JAMES E. McGHEE III
SEILLER WATERMAN LLC
22nd Floor-Meidinger Tower
462 S. Fourth Street
Louisville, Kentucky 40202
Telephone: (502) 584-7400
Facsimile: (502) 583-2100
E-mail: cantor@derbycitylaw.com
E-mail: bordy@derbycitylaw.com
E-mail: neukomm@derbycitylaw.com
E-mail: yeager@derbycitylaw.com
E-mail: mcghee@derbycitylaw.com
*Counsel for Debtor*

## CERTIFICATE OF SERVICE

It is hereby certified that on August 5, 2013 a true and correct copy of the foregoing Application for an Order (1) Directing and Approving Notice; and (2) Setting Deadline for Filing Objections to Petition was (a) mailed electronically through the U.S. Bankruptcy Court's ECF system to the electronic addresses as set forth in the ECF system to the U.S. Trustee and all other persons receiving electronic notifications in this case, and (b) served first class mail to those entities identified as the holders of the Twenty Largest Unsecured Claims against the Debtor, and to all secured creditors of the Debtor.

/s/ James E. McGhee III
JAMES E. McGHEE III